IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                       No. 11-CR-1532 MCA

ELI J. SANDOVAL and
MADELINE SANDOVAL,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR RULE 44(c) HEARING,
## BUT DENYING JOINT REPRESENTATION

THIS MATTER is before the Court on the United States Motion for Rule 44(c) Hearing [Doc. 58]. The Court conducted a hearing on November 4, 2011.[1]

### Background

Defendant Eli J. Sandoval was charged by Grand Jury Indictment on June 7, 2011 with various drug and firearms violations. He is represented by retained counsel, Robert J. Gorence.

On October 13, 2011, the Grand Jury returned a Superseding Indictment, charging Eli Sandoval with one count of conspiracy in violation of 21 U.S.C. § 846, one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); three counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession with intent to distribute 100 grams and more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); one

---

[1] This hearing was conducted by the district's criminal duty judge at the express request of the assigned trial judge. Thus, any appeal from the magistrate judge's ruling is directed to the trial judge and not to the circuit court, and must be filed within fourteen days from entry of this Order on the docket. *See* Fed. R. Crim. P. 59.

count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

The Superseding Indictment charged Eli Sandoval's spouse, Madeline Sandoval, with two counts of structuring transactions to evade reporting requirements in violation of 31 U.S.C. § 5324 (a)(3).[2]

At the Defendants' initial appearance on the Superseding Indictment, attorney Robert J. Gorence advised the Court that he was counsel for Eli Sandoval and was entering an appearance as counsel on behalf of the co-Defendant Madeline Sandoval. Mr. Gorence stated that he discussed conflicts with Defendants and they were waiving any conflicts.

It is alleged that quantities of drugs were discovered in a residence jointly occupied by Defendants and that firearms were also found, including one firearm and ammunition in a safe. Defendant Madeline Sandoval is alleged to have made exculpatory statements, indicating that she was unaware of any drugs stored at her home, and that the drugs allegedly found at the parties' home were in a cabinet above the refrigerator in an area where she could not reach. She is also alleged to have said that she did not know the combination to the safe where a firearm and ammunition were found.

Defendant Eli Sandoval, an alleged convicted felon, is charged, *inter alia*, with firearms offenses. Thus, he may not use or possess any firearm or ammunition. Madeline Sandoval, on the other hand, is not alleged to have any felony convictions, and she can own, use or possess firearms

---

[2] At the commencement of the Fed. R. Crim. P. 44(c) hearing, Mr. Gorence advised that the charges against Madeline Sandoval are improperly joined and should be part of a single indictment. He intends to seek severance of the charges. If successful, severance would make moot the issue of joint representation. At this time, however, the Court notes there is a single Superseding Indictment before the Court, and unless severance is granted at a later date, there will be one trial.

or ammunition. Eli Sandoval is charged with drug offenses; Madeline Sandoval is not.

## Court's Responsibility

When a Court becomes aware of a potential conflict of interest, it must take adequate steps to ascertain whether the conflicts warrant separate counsel. Wheat v. United States, 486 U.S., 153, 160 (1988); *see also* United States v. Winkle, 422 F.2d 605, 611 (10th Cir. 1983)(the "court should itself initiate an inquiry" whenever "the trial judge knows or reasonably should know that a particular conflict exists.").

In this case, attorney Gorence stated at the initial appearance that he would be representing both Defendants and that his clients would waive conflicts. Thus, the Court is already apprised of the potential for conflicts. Moreover, the United States advised the Court of the need to conduct a hearing Fed. R. Crim. P. 44(c). That rule provides in part:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Indeed, should the Court not conduct a hearing after having been put on notice of a potential for conflict, there is a presumption that a defendant's right to effective assistance of counsel has been violated. United States v. Cook, 45 F.3d 388, 393-94 (10th Cir. 1995)(violation of right to counsel when trial court failed to inquire following defendant's objection to possible conflict).

With these obligations in mind, the Court promptly scheduled a Rule 44(c) hearing within two days of Defendants' response [Doc. 62] to the United States' Motion for Rule 44(c) Hearing [Doc. 58].

In a Rule 44(c) hearing, a court must inform defendants of their rights and caution them of such potential pitfalls as: privilege-related complications, *see* United States v. Jones, 2011 WL

3

4923415 (ED Pa. Oct. 17, 2011); divided attorney loyalty, *see* United States v. Fan, 36 F.3d 240, 248 (2d Cir. 1994); compromised attorney-client communications and inhibition of independent plea negotiations, *see* United States v. Mazzaferro, 865 F.2d 450, 452 (1st Cir. 1989); and preclusion of a "shifting of blame" defense, *see* United States v. Solomon, 856 F.2d 1572, 1580 (11th Cir. 1988). *See also*, United States v. Coneo-Guerrero, 148 F.3d 44, 47-48 (1st Cir. 1998).

### Right to Counsel

The Sixth Amendment to the United States Constitution guarantees every defendant the right to the assistance of counsel for his/her defense. This is an express guarantee, and the United States Supreme Court indicates that the guarantee of right to counsel includes a co-relative right to representation free from conflict of interest. Wood v. Georgia, 450 U.S. 261, 271 (1981). In cases involving multiple representation, there is a significant potential for serious conflicts of interest.

While multiple representation of co-defendants does not constitute a per se violation of a defendant's right to counsel, there is a great potential for such conflicts. United States v. Martin. 965 F.2d 839, 842 (10th Cir. 1992), *quoting* United States v. Burney, 756 F.2d 787, 790 (10th Cir. 1985)(multiple representation of criminal defendants engenders special dangers of which a court must be aware), *citing* Wheat, 486 U.S. at 159.

In the present case, both Defendants testified under oath that they were aware of their right to separate counsel. Both heard the Court's explanation of the dangers, pitfalls and problems discussed by the Court in its Rule 44(c) colloquy, and both indicated that they wish to waive conflicts and be jointly represented by Mr. Gorence.

A defendant is entitled to an attorney who will zealously advocate his or her interests without being conflicted by divided loyalty toward another client. Indeed, in Holloway v. Arkansas, 435 U.S. 475 (1978), the United States Supreme Court highlighted the problem of joint representation.

4

> Joint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing . . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing . . . the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

Holloway, 435 U.S. at 489-90.

Such is the situation here. In a case with co-defendants, it is commonplace for the prosecutor to attempt to "divide and conquer" by seeking to obtain the cooperation of one defendant in return for dismissal of charges against the cooperator; benefits under safety valve provisions of the federal sentencing guidelines; or a specific and perhaps lenient sentence. In return, the cooperating defendant must provide information and testimony against other defendants.

Entry into a cooperating agreement is not possible in a case where one attorney represents two defendants, as in the present case. Mr. Gorence cannot take action to benefit one client when the same action serves to penalize the other client. Thus, as noted by the United States Supreme Court in Wheat, Mr. Gorence would be prevented from doing what is typically done in co-defendant cases, and that is, explore entry into a cooperating agreement, or seek immunity for the co-Defendant.[3] The attorney's inability to negotiate a cooperating agreement in return for immunity or leniency limits an attorney's effectiveness *vis-a-vis* one client.

Joint representation is also problematic in situations where the level of one defendant's culpability is significantly different from the level of the other's. Here, Defendants are not charged with the same crimes. Eli Sandoval is charged with far more serious crimes involving drug and

---

[3]Mr. Gorence states that this is not a problem, as neither Defendant has any interest, desire or intent to offer any testimony as against the other. Thus, Mr. Gorence's inability to enter into a cooperating agreement or seek immunity does not pose an actual conflict, but a potential one if his client(s) have a change of heart.

5

firearm offenses; Madeline Sandoval is not. Indeed, in comparing the criminal charges and potential penalties, the charges against Madeline are less serious and the penalty substantially less severe.

Cases where the level of culpability for criminal activity is so significantly different afford a defense attorney an opportunity to argue that one defendant was a "bit player," only minimally involved, and the real culprit is another defendant. Oftentimes, the best defense strategy is for one defendant to accuse the co-defendant of the crime. *See* Hammon v. Ward, 466 F.3d 919, 930 (10th Cir. 2006). Mr. Gorence will not be able to shift the blame or argue in trial or, if there is a guilty verdict, at sentencing, that one client is more or less culpable. Solomon, 856 F.2d 1572. When one attorney represents co-defendants, the attorney will be precluded from making the minor participant argument, because to the extent that one defendant's participation is diminished, the other defendant's participation is necessarily enhanced. Thus, defense counsel is put in the untenable situation of trying to promote one defendant's interests over another defendant's liberty. Should one or both Defendants be convicted, the potential conflict ripens into an actual conflict in that sentencing arguments that could benefit one client are eliminated. Burney, 756 F.2d 787.

Joint representation also raises problems concerning admissibility of confessions in joint trials. While it is unknown whether any defendant has made inculpatory statements, it is undisputed that one defendant, Madeline, made allegedly exculpatory statements. The statement she allegedly made to law enforcement may benefit her to the extent she argues that she was unaware of the presence of drugs in the house, and that the drugs were stored in the location where she could not even reach. That statement, if admitted, in a house where only two adults reside, leaves the inference that if drugs were there, they belong to the other joint occupant–her husband. Therefore, in showing that Madeline is an innocent owner of the house without knowledge of the presence of drugs, the inference is that Eli Sandoval is not. Keeping the statement in evidence appears beneficial

to Madeline, and may enhance her credibility, but keeping it in evidence arguably hurts Eli Sandoval. This exculpatory statement imposes a substantial obstacle for counsel in deciding whether to oppose the admissibility of the statement. The statement raises a real rather than potential conflict.

There is also a second exculpatory statement about a home safe where a firearm, ammunition and cash were found. Madeline said she did not have the combination to the safe; thus, she could not have opened it. If that statement is admitted into evidence and believed, it serves her interest in propping up her credibility as to her lack of knowledge, but is hurtful to her husband, who presumably had the combination to the safe and, therefore, possession and control of the gun and ammunition found therein. These statements appear to raise actual, not just presumed, conflicts.

Joint representation in this case also significantly limits Mr. Gorence's ability to offer a standard defense to the gun charges. Eli Sandoval is alleged to be a convicted felon who can neither own, use nor possess firearms. Yet, firearms were found in the residence. Simply finding firearms in the residence may be insufficient for the United States to prove that they were possessed by Eli Sandoval. In situations of joint occupancy of the location where contraband is found, "the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998).

Under this requirement, it is presumed that a convicted felon residing in a residence where there is joint occupancy, would present evidence or argue that the firearms were owned, used or possessed by the co-occupant and that the felon had no knowledge of the weapons. In other words, Eli Sandoval might be able to shift the blame, Solomon, 856 f.2d 1572, but joint representation bars that tactic. There is an actual conflict here because Mr. Gorence may be hard-pressed to shift the

blame or make that argument. Id. His client, Madeline, already stated that she did not know the combination to the safe where a firearm is alleged to have been found. For Eli Sandoval's argument that he was unaware of and did not possess the firearm, he would need to impeach Madeline's statement to law enforcement that she did not know the combination to the safe. It would thus be necessary to show that Madeline made a false statement to law enforcement officers, that she was not credible, and that she is the one who had access to the safe and kept a firearm there. Obviously, Mr. Gorence could take no action to challenge the truthfulness of his client, Madeline, or the credibility of her statement. As she is not a convicted felon, she has a right to the firearm, but her statement to law enforcement officers concerning the combination of the safe raises a significant obstacle to Eli Sandoval's ability to argue lack of knowledge and no actual or constructive possession *vis-a-vis* the firearms.[4]

Joint representation in this case also raises potential conflicts in the event one defendant or the other wants to exercise a right to testify during proceedings. Presenting one defendant or the other subjects the testifying defendant to cross-examination. While on direct examination, an examining attorney may carefully limit the scope of examination or the evidentiary areas pursued, once cross-examination begins, save for the right to assert evidentiary objections, the examining attorney has very little control over the course, scope or outcome of cross-examination.

In offering one defendant's testimony at trial, that testimony may significantly expose the other defendant to criminal liability. Indeed, Mr. Gorence may be hard-pressed to offer advice to one Defendant or the other about whether the client should or should not take the stand, knowing

---

[4]Without disclosing defense strategy, Mr. Gorence said at the Rule 44 hearing that, given the number and location of guns seized, no reasonable and prudent attorney would attempt to show that the gun in the safe was Madeline's, or that the guns and ammunition found were possessed by her.

that the testimony of one defendant may, based on cross-examination, be harmful to the other.[5]

Joint representation of familial defendants may be far more problematic than joint representation of defendants who are not related by blood or marriage. One defendant may defer to another out of a sense of love, affection, loyalty or concern, even when doing so places the deferring defendant in jeopardy. *See, e.g.*, Jones, 2011 WL 4923415, at *3[6]. For example, if husband and wife defendants are both eligible for halfway house release or community corrections placement, but due to rules prohibiting co-defendants from residing at the same facility, one defendant may defer to the other, i.e., a husband agreeing to have the wife reside at the halfway house and the husband remaining in detention. This is an example how joint representation can favor one defendant, but at the expense of another. Because Defendants are in the same family and would likely be influenced by love, loyalty and concern, this is a potential conflict.

### Counsel of One's Choice

In a situation where a defendant is not indigent and wishes to retain counsel of choice, a court should generally defer to that defendant's request, but that general practice is not absolute. In Wheat v. United States, the Supreme Court stated:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer which he prefers.

Wheat, 486 U.S. at 153, 159. In sum, Wheat teaches that a defendant's choice of counsel does not

---

[5] Madeline, who does not have a felony conviction, may well want to testify, but Mr. Gorence may not be able to counsel her on whether it is wise of prudent to take the stand. Mr. Gorence also notes that the parties have a marital privilege against testifying.

[6] The court in Jones examined some of the issues inherent when a jointly represented husband and wife invoke a "Till death do us part" defense, and after quoting legendary legal giant and rock icon, Meatloaf, who "once declared, 'I would do anything for love, but I won't do that,'" disqualified counsel from joint representation of defendants/spouses.

trump a court's determination that joint representation may serve to deny the right to effective representation. Wheat, 486 at 164. In this case, both Defendants indicate that their waiver is knowingly, willingly and voluntarily made, and wish to have Mr. Gorence represent them, notwithstanding the many problems discussed. They stated that Mr. Gorence is an excellent attorney, and their interests would be best served with him as their advocate.

## Finality of Judgments

The Court has an independent obligation to minimize the risk of uncertainty in final judgments. This task is made all the more difficult because the Court is required to peer into the unknown and make determinations as to matters that may or may not occur. While Defendants at this juncture may state that they are willing to waive conflicts and that their request is freely, voluntarily and intelligently made, should Defendants be convicted, there is no guarantee that they will not raise ineffective assistance of counsel or denial of effective legal representation as a basis to set aside their conviction either on direct appeal or in subsequent collateral challenges under 28 U.S.C. § 2255. Indeed, given the wide range of potential conflicts which can ripen into actual conflicts, and the actual conflicts which have already been identified, the Court questions whether effective representation of each Defendant can occur in a joint representation situation in this case.

An attorney representing two defendants, who is limited in using all of an advocate's tools otherwise available to an attorney free from conflict, may be acting below the reasonably objective standard recognized in Strickland v. Washington, 466 U.S. 668 (1984). *See* Jones, 2011 WL 4923415, at *5 (noting that the court "must preserve Defendant's right to effective counsel and maintain the integrity of the criminal process [but that c]hoice of counsel must sometimes yield to adequacy of representation when potential conflict breeds insecurity over a lawyer's ability to be an effective advocate.").

The Court is mindful of the need to preserve judicial, prosecutorial and defense resources; and joint representation raises the potential appellate issue of denial of the right to effective counsel if there is a conviction. There is a risk, and not a minor one, that an appellate court in reviewing a conviction, or a federal court in a post-appeal challenge under 28 U.S.C. § 2255 may conclude that one defendant was denied effective assistance of counsel because Mr. Gorence's duty and loyalty to that defendant was compromised by his advocacy on behalf of the other. If this occurs, a violation of a defendant's right-to-counsel would result, and the Court is mindful of its responsibility to ensure that all parties have a right to a full and fair trial and that all rights and guarantees under the Constitution are afforded the Defendants.

The issues raised by this Rule 44(c) inquiry also implicate the rules of professional responsibility.

> [F]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them.

Wheat, 486 U.S. at 160, 163. Because of this independent obligation, courts are given substantial latitude in declining waivers of conflict of interest in cases not only where there is an actual conflict demonstrated before trial, but in the more common cases where the potential of conflict exists and may ripen into a full conflict. Id. at 163.

Under the New Mexico Rules of Professional Conduct, N.M.R.A. 16-100 *et seq.*, rules which have been adopted by the United States District Court, an attorney "should not represent a client whose interests are adverse to those of a present client, or whose interests are adverse to those of a former client on a matter that is the same or substantially related to the previous matter." In the Matter of Stein, 143 N.M. 462, 468 (2008).

Counsel in this case have all acted professionally and responsibly in bringing the issue to the

11

Court in a pretrial situation before a problem arises that cannot be controlled, and counsel are to be commended for promptly seeking a court resolution of a thorny matter. The rules involving conflict, as evidenced by Rule 44(c), as well as the rules on professional responsibility, show that these are not imaginary concerns, but potential problems which can spin out of control, causing real and palpable conflicts and the resulting disruption of the judicial process, waste of judicial, prosecutorial and defense resources, and/or endangering the outcome of court proceedings.

For all these reasons, while the Court notes that Defendants wish to retain Mr. Gorence, and have indicated under oath that they wish to waive any conflicts, the Court believes that there is a significant risk that an attorney's split loyalties could result in one defendant not having the same rights, benefits, and representation that would be available to that defendant if separate representation was required. The conflicts identified by the Court are both potential and actual and may result in the denial of the right to effective assistance of counsel.

With the above-noted concerns in mind, the Court cannot state that no conflict of interest is likely to arise. *See* Rule 44(c)(2). Therefore, the court is compelled, over Defendants' objections, to deny authorization for Mr. Gorence to engage in joint representation of these clients.

IT IS SO ORDERED.

                                            */s/ Lorenzo F. Garcia*
                                            Lorenzo F. Garcia
                                            United States Magistrate Judge